**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Adrian Alex, | ) | |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| | ) | |
| Timothy Schuetzle, Warden, | ) | |
| North Dakota State Penitentiary | ) | Case No.   1:05-cv-113 |
| | ) | |
| Respondent. | ) | |

Petitioner Adrian Alex ("Alex") filed a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody seeking restoration of his good-time credits.  Respondent answered and moved to dismiss the petition. The Honorable Daniel L. Hovland, Chief Judge of the District Court, has referred this matter to the undersigned for preliminary consideration.

In his motion to dismiss, Respondent argues that Alex's petition must be dismissed for failure to exhaust state-court remedies.  In the alternative, Respondent urges the court to dismiss the petition on the merits arguing that there has been no violation of Alex's constitutional rights.

## I.   <u>BACKGROUND</u>

Alex was convicted in state court of the offense of murder, a class AA felony, in August 1996, and sentenced to fifty years' imprisonment, with twenty-six years suspended.  <u>See</u> Respondent's Motion to Dismiss, Ex. 1.  He was also convicted of the offense of robbery, a class B felony, and sentenced to ten years' imprisonment. <u>See</u> Respondent's Motion to Dismiss, Ex. 2. He is currently incarcerated at the North Dakota State Penitentiary ("NDSP"), where he is serving these sentences concurrently.

On November 19, 2004, Alex was given a copy of an incident report charging him with threatening another inmate, an A-42 infraction, and advised that the NDSP's Adjustment Committee ("Committee") was convening a disciplinary hearing to address the matter.  <u>See</u> Respondent's Motion to Dismiss, Ex. 3.  The report indicated the incident occurred on November 17, 2004, involved a threat to another person, and provided the following limited facts:

> On the above date I completed an investigation with [sic] clearly indicates that inmate Adrian Alex made threat to another inmate that they were going to jump him.

The name of the inmate to whom Alex allegedly made the threat was not disclosed.  <u>See</u> <u>id.</u>

On November 22, 2004, the Committee convened a disciplinary hearing to address the charge contained in the incident report.  <u>See</u> Respondent's Motion to Dismiss, Ex. 3.  Upon considering the incident report, a confidential investigative report, Alex's testimony, and staff testimony, the Committee found "there was enough evidence within the confidential information and the staff supplemental information that this report should be reheard as an A-27 for gang related activities."  <u>See</u> Respondent's Motion to Dismiss, Ex. 4.  The Committee continued the hearing with instructions to revise the incident report.  <u>Id.</u>

Based on the record before the court, the only information disclosed to Alex prior to, or during, the first hearing was the incident report and possibly the staff testimony for which there is no record.  There is no indication that the other information considered by the Committee was disclosed, including the confidential investigative report that contained, among other things, an admission allegedly made by Alex to penitentiary officer  Lt. Radenz, that he was the leader of the "Native Nation."  Alex complained to the Committee about the lack of information that had been provided to him. <u>See</u> Respondent's Motion to Dismiss, Ex. 3.

Pursuant to the Committee's instructions, Unit Manager Jean Sullivan revised the incident report to state:

> On the above date [November 17, 2004], I completed an investigation which clearly indicates that inmate Adrian Alex made threats to another inmate that they were going to jump him. Adrian Alex delivered this message to the inmate as directed to by and for two other inmates.

In addition, she re-coded the infraction as an A-27, the possession and/or practice of any gang-related paraphernalia or activities. <u>See</u> Respondent's Motion to Dismiss, Ex. 5. It does not appear she provided Alex with more specific information relating to the gang charge, including notice of the admission allegedly made to Lt. Radenz.

On November 29, 2004, the Committee reconvened Alex's disciplinary hearing to address the new charge. <u>See</u> Respondent's Motion to Dismiss, Ex. 6. Alex chose not to participate. <u>See</u> Respondent's Motion to Dismiss, Exs. 5 and 6. Relying upon the revised incident report and the confidential investigative report, which contained the report of the admission purportedly made to Lt. Radenz, the Committee concluded:

> Inmate Alex admitted to Lt. Tom Radenz on 11-19-04 that "if he was the leader of the native nation an [sic] Alex stated "yes." Alex refused to appear before the disciplinary committee. Mr. Alex is guilty of practice of gang related activities by his own admission. 15 A-27 Report. The investigation also shows that he (Alex) is the leader of the gang. This is serious as he is organizing a threat group inside the institution.

<u>See</u> Respondent's Motion to Dismiss, Ex. 6. The Committee recommended that Alex lose one month of good time and receive fifteen days of disciplinary detention. This recommendation was summarily approved by Respondent the same day. <u>See</u> <u>id.</u>

Alex claims that he first learned of his alleged admission to Lt. Radenz when he received a copy of the Committee's written decision following the hearing. There is nothing in the written

record provided to the court that contradicts this claim.  And, while it is conceivable the alleged admission could have been disclosed to Alex orally during the first hearing, there is nothing that indicates this occurred.

Alex then appealed the decision to Respondent asserting he did not threaten the other prisoner as initially charged but only intended to warn him of action that may be taken by others. Alex also denied any involvement in gang activity and offered to take a lie-detector test to prove his innocence on the gang charge.  In particular, he denied making any admission to Lt. Radenz claiming  that Radenz must have misunderstood him.   Finally, he argued that he had not been treated fairly at the initial disciplinary hearing, noting the failure of the Committee to provide him with any of the details relating to the charge.  He said it was for these reasons, and the fact he believed the Committee had already made up its mind, that he did not attend the reconvened hearing. See Respondent's Motion to Dismiss, Ex. 8.

Respondent denied Alex's appeal on December 14, 2004.  In his written denial, Respondent provided details regarding some of the evidence that had been used to find Alex guilty of the infraction, including the existence of certain photographs, which only days earlier the Committee elected not to share with Alex, claiming confidentiality.  Respondent acknowledged the disputed evidence regarding whether Alex had threatened the other inmate or was merely warning him. However, Respondent went on to conclude that "your comments to Lt. Radenz and pictures we have of you with these known gang members is ample evidence for the committee to find you guilty of the A-27."  As for Alex's written explanations, Respondent stated these should have been provided at the hearing before the Committee.  In making this comment, it is not clear whether Respondent assumed that more information would have been provided to Respondent at the reconvened hearing.

Respondent did not address Alex's complaints regarding the lack of evidence made available to him. See Respondent's Motion to Dismiss, Ex. 8.

Alex then appealed the administrative conviction to Elaine Little, the Director of the Department of Corrections and Rehabilitation, again denying any gang involvement, offering to take a lie detector test, and complaining about the unfairness of the process. See Respondent's Motion to Dismiss, Ex. 10. This appeal was also denied. See Respondent's Motion to Dismiss, Ex. 10.

In May 2005, Alex petitioned the state district court for a writ of habeas corpus pursuant to N.D.C.C. Chapter 32-22. See Respondent's Motion to Dismiss, Exs. 11 & 12. His petition was denied initially on June 21, 2005, and again on reconsideration in July 2005. See Respondent's Motion to Dismiss, Exs. 15 & 15A. The reasons for the denial are discussed in more detail later herein.

On October 31, 2005, Alex filed a Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody with this court. See Docket No. 1. The petition sets forth the following claims:

> GROUND ONE: Due Process Violation; The Petitioner was not allowed to see any evidence against him prior to hearing.
>
> GROUND TWO: Due Process Violation; Impartial Tribunal
>
> GROUND THREE: Due Process; Use of false statement by a Corrections Officer were [sic] used against me

Id. Accompanying the petition are a number of exhibits and a memorandum of law. Alex claims in his memorandum that he never received the documentation relied upon by the Committee in reaching its decision and did not learn of his purported admission of gang involvement until after the Committee had found him guilty of the A-27 infraction. He argues that the failure of the

Committee to provide him with this and other information treated as confidential violated the due process safeguards implemented by the seminal case of <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555 (1974) for prison disciplinary proceedings.  He also claims that his due process rights were violated because the Committee was biased and assumed a prosecutorial role.

On December 8, 2006, the court directed Respondent to answer or otherwise respond to Alex's § 2254 petition.  <u>See</u> Docket No. 4.  In compliance with the court's directive, Respondent filed an answer on February 6, 2006.  <u>See</u> Docket No. 5.  In addition, he filed a Motion to Dismiss.  <u>See</u> Docket No. 6.  Therein, Respondent asserts that Alex has failed to exhaust his federal constitutional claims in state court and, in the alternative, that Alex's claims fail on the merits.  <u>See</u> <u>id.</u>

On April 12, 2006, the court ordered Respondent to file under seal for *in camera* inspection the "confidential information" considered by the Committee.[1]

---

[1]  Under <u>Superintendent v. Hill</u>, 472 U.S. 445 (1985), court review of prison disciplinary decisions is very limited.  Generally speaking, the court should not make an independent determination as to the credibility of the witnesses or weigh all of the evidence.  Rather, the court should confine its review to determining whether there is any evidence supporting the decision.  Nevertheless, when evidence is withheld and there are claims of lack of proper disclosure, some consideration of the evidence is  required to assess the significance of the claimed violations and in some cases the reliability of the withheld information.  <u>See</u>, <u>e.g.</u>, <u>Sira v. Morton</u>, 380 F.3d 57, 70-81 (2nd Cir. 2004); <u>Turner v. Caspari</u>, 38 F.3d 388, 393 (8th Cir. 1994).

In reviewing the confidential information, it appears the alleged admission was made during investigative questioning  relating to the original charge, that it was made orally, and that it was witnessed only by Lt. Radenz.  The portion of Lt Radenz's report that addresses the admission is rather perfunctory, with a total of two sentences being devoted to the admission.  Further, the admission, as chronicled in the report, is that Alex admitted to being a leader of the Native Nation.  There is no reported admission or acknowledgment by Alex that the Native Nation was a gang or that he was involved in gang activities. Consequently, any conclusion by the Committee on these points appears to have come from the other confidential information.

The photographs mentioned by Respondent in his denial of Alex's appeal depict a group of inmates, but it would be difficult to conclude from the photographs alone that the inmates are gang members.  Consequently, as with the claimed admission, it appears that any conclusion there is a gang connection was based upon the other confidential information.

Putting aside the issue of reliability, the remaining information in the confidential report is not overwhelming.  And, some of it appears to be contradictory, at least in terms of the level of claimed involvement on the part of Alex.  For example, some of the information points to the conclusion that a person other than Alex was the leader of the Native Nation, contrary to the claimed admission and the finding by the Committee on this point, which appears to be exclusively based on the admission.  This includes evidence that Alex was acting at the direction of others (which seems

## II.   **LEGAL DISCUSSION**

### A.   **Scope of Review**

Under 28 U.S.C. § 2254, a federal court may review state-court criminal proceedings to determine whether a person is being held in violation of the United States Constitution or other federal law.  This review is limited because, as a matter of federalism and comity, primary responsibility for ensuring compliance with federal law in state-court criminal proceedings rests with the state courts.  Consequently, federal-court intervention is limited under § 2254(d) to the instances in which a person is being held in custody pursuant to a state-court decision that (1) is directly contrary to established federal law as enunciated by the United States Supreme Court, (2) is an objectively unreasonable application of Supreme Court precedent, or (3) is based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding.  See generally Woodford v. Visciotti, 537 U.S. 19, 26-27 (2002)(per curiam); Williams v. Taylor, 529 U.S. 362, 399-413 (2000); Williams v. Taylor, 529 U.S. 420, 436-437 (2000).[2]

---

contrary to his being the leader) and an opinion based upon an examination of one of the photographs that another individual was the leader.

[2]  The Supreme Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning and has described the differences as follows:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.*, at 405-406, 120 S.Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.*, at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.*, at 409- 410, 120 S.Ct. 1495. See also *id.*, at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

Bell v. Bradford, 535 U.S. at 694; see also Early v. Packer, 537 U.S. 3, 7-11 (2002) (per curiam) (distinguishing between the application of the "contrary to" and "unreasonable application" clauses).

Also, in keeping with the policy of state courts having primary responsibility for enforcement of federal rights in state-court proceedings, § 2254 contains a number of additional rules and procedures for ensuring that state-court convictions are given the maximum effect as allowed by law and to limit federal-court "retrials" of state-court criminal proceedings under the guise of federal habeas corpus.  See  Bell v. Bradford, 535 U.S. 685, 693 (2003).  For example, under § 2254(b), a federal court may only consider habeas claims that have been first properly presented to the state courts and exhausted using available using available state-law procedures.  E.g., Rhines v. Weber, 125 S.Ct. 1528, 1533 (2006); Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001).[3]  And, in most cases, claims that have been procedurally defaulted at the state level are not subject to review in federal court.[4]

_____

[3]  In Dixon v. Dormire, the Eighth Circuit summarized the exhaustion requirement as follows:

It is well established that the exhaustion doctrine, now codified, precludes the issuance of a writ of habeas corpus to a state prisoner on a claim for which that prisoner has not "exhausted the remedies available" in the state courts. 28 U.S.C. § 2254(b)(1)(A), (c) (1994 & Supp. IV 1998). "The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). While the exhaustion doctrine does not require a petitioner to file repetitive petitions in state court or to invoke "extraordinary remedies" outside the standard review process where relief has not been provided in the past, it does require a state prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *See O'Sullivan*, 526 U.S. at 844-45, 119 S.Ct. 1728. The Supreme Court has clarified that in order to invoke "one complete round" of available state court remedies prior to filing for federal habeas corpus relief, a state prisoner must seek the discretionary review of the state supreme court when that review is part of the ordinary and established appellate review process in that state. *Id*. at 845, 847, 119 S.Ct. 1728.

263 F.3d at 777.  A claim is properly presented if the petitioner refers to the particular federal constitutional right or cites to a state or federal case that raises the pertinent constitutional issue.  Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005).

[4]  The Eighth Circuit has set forth the governing rule and the relevant exceptions as follows:

A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds. *Reagan v. Norris,* 279 F.3d 651, 656 (8th Cir.2002). A state prisoner procedurally defaults a claim when he violates a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court, unless the prisoner can show cause and prejudice

Petitioners are also required in most cases to develop the factual bases for their federal claims in the state-court proceedings. A federal evidentiary hearing will generally not be available to develop the necessary facts unless a petitioner can show that the claims rely upon a new, retroactive law or that the petitioner could not have previously discovered the facts by the exercise of due diligence. 28 U.S.C. § 2254(e)(2). Finally, state-court factual findings carry a presumption of correctness that can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.      Analysis**

**1.      State-court remedies have not been fully exhausted**

Prior to seeking habeas relief in this court, Alex brought a petition for state habeas relief pursuant to N.D.C.C. ch. 32-22 alleging an unconstitutional deprivation of good-time credits. In that proceeding, Respondent, among other things, argued that habeas relief under ch. 32-22 was inappropriate. In particular, Respondent argued that §§ 32-22-02 and 32-22-17 prohibit the granting of habeas relief for the deprivation of good-time credits under ch. 32-22 when a person is legally in custody and the minimum period of incarceration that must be served before good-time reductions become effective has not yet expired. See Respondent's Motion to Dismiss, Ex. 14.

The state district court dismissed Alex's state habeas petition. In doing so, it accepted Respondent's argument that habeas relief under ch. 32-22 was not available, but also went on to conclude that Alex's constitutional claims lacked merit in any event. Alex v. Schuetzle, Order

_____

for the default, or actual innocence. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In other words, a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards. *Murray v. Carrier,* 477 U.S. 478, 493-96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Clemons v. Luebbers 381 F.3d 744, 750 (8th Cir. 2004). The only other instance in which a federal court can consider a procedurally defaulted claim is when a federal court elects to deny the claim on the merits under § 2254(b)(3) notwithstanding the procedural default.

dated June 21, 2005, Case No. 05-C-0881, District Court, South Central Judicial District, Burleigh County (Hagerty, J.).  See Respondent's Motion to Dismiss, Ex. 15.

Following dismissal of his state habeas petition by the district court, Alex proceeded directly to this court by filing his § 2254 petition.  He did not attempt to first seek relief from the North Dakota Supreme Court.  Anticipating the argument that he has failed to exhaust his state-court remedies, Alex argues in the legal memorandum accompanying his petition that such efforts would have been futile relying upon the habeas proceedings in Schultz v. Schuetzle, Case No. 08-04-K-1582, District Court, South Central Judicial District, Burleigh County and Schultz v. Schuetzle, N.D. Supreme Court, Case No. 20050214.  See Docket No. 1.

In Schultz, a state prisoner sought habeas relief under N.D.C.C. ch. 32-22 alleging an unconstitutional deprivation of good-time credits.  Respondent opposed the petition arguing, among other things, that habes relief  under ch. 32-22 was not available for the same reasons as argued in Alex's state district court proceeding.  In Schultz, the district court not only agreed with Respondent's argument that relief under ch. 32-22 was not appropriate because petitioner was in legal custody and the minimum period of his sentence before consideration of good-time reduction had not been reached, but also went on to conclude that court review of a deprivation of good-time credits is not appropriate because eligibility for good-conduct reduction is a  matter within the exclusive discretion of prison officials.  Schultz v. Schuetzle, Order dated February 11, 2005, Case

No. 08-04-K-1582, District Court, South Central Judicial District, Burleigh County (Anderson, J.).[5] However, the district court in <u>Schultz</u> also concluded that no constitutional violations had occurred.

After being denied relief in district court, the petitioner in <u>Schultz</u> filed for a supervisory writ of habeas corpus from the North Dakota Supreme Court.  Among other things, Respondent again argued to the supreme court that habeas relief under N.D.C.C. ch. 32-22 was not available and also defended the petition on the merits.  The North Dakota Supreme Court denied the application without giving any reason for its denial.  <u>Schultz v. Schuetzle</u>, N.D. Supreme Court, Case No. 20050214.

Alex argues that the state district court holding in <u>Schultz</u> that state courts do not have the power to correct an unlawful deprivation of good-time credits, coupled with the North Dakota Supreme Court's refusal to grant any relief in that case, indicates "it would have been a futile and expensive burden to apply to the North Dakota Supreme Court when they had just refused to entertain a Petition for a Supervisory Writ with almost the same exact issues."  <u>See</u> Docket No. 1.

In his motion to dismiss, Respondent argues that Alex failed to exhaust his available state

---

[5]  Specifically, the district court in <u>Schultz</u> concluded the following before addressing the merits of the petition:
> The state argues that the Petitioner is not entitled to habeas corpus relief as his legal sentence has not yet expired and he is held at the penitentiary under lawful and final judgments of the Ward County District Court, § 32-22-02(2), N.D.C.C.  Furthermore, the Respondent argues that the District Court does not have the authority to exercise any control over the good time earned by inmates at the correctional facility as that is an internal program under the control of the prison administration.  Finally, the Respondent argues that Shultz was not denied due process.
>
> After considering the pleadings in the file and the applicable case and statutory law, it is the conclusion of the Court that Mr. Schultz is lawfully detained in custody pursuant to a final order from the Ward County District Court and is not entitled to relief under Habeas Corpus Chapter of the North Dakota Century Code, (N.D.C.C. § 32-22)
>
> It is the conclusion of the Court that the determination of the eligibility of a prisoner for good conduct reduction is within the discretion of the Department of Corrections and the administration of the penal institution and is not within the discretion of the Courts.  <u>State v. Ostafin</u>, 1997 ND 102, 564 N.W.2d 616 (ND 1997).

The district court's order was one of the documents filed by Respondent with this court in <u>Schultz v. Shutetzle</u>, Case No. A1-05-092, Docket No. 6.  While the North Dakota Supreme Court has previously addressed challenges to the deprivation of good-time credits on the merits as discussed in more detail later herein, it appears the statutory scheme authorizing sentence reduction for good time, which is now codified at N.D.C.C. ch. 12-54., has since been altered.

remedies by not seeking a writ of habeas corpus under N.D.C.C. ch. 32-22 from the North Dakota Supreme Court, but does not explain why a petition to the state supreme court would be any more cognizable under ch. 32-22 than a petition to the district court, which Respondent argued in Alex's state district court proceeding and in <u>Schultz</u> was not available.  Respondent also argues that Alex's reliance on the district court and North Dakota Supreme Court proceedings in <u>Schultz</u> is misplaced because the state district court in <u>Schultz</u> concluded there was no constitutional violation.  However, in making this argument, Respondent neglects to point out the other holdings of the state district court in <u>Schultz</u> that the North Dakota Supreme Court did not address when it denied Schultz's habeas petition without explanation.

Based on the foregoing, the court sympathizes with Alex's confusion regarding what state remedies are now available to challenge a deprivation of good-time credits, and the appropriateness of state habeas relief under ch. 32-22.  Nevertheless, it appears there still is a state remedy available that should be exhausted, but to understand why requires some explanation of how prisoner challenges to alleged unlawful deprivations of good-time credits have been dealt with in the past.

In <u>Smith v. Satran</u>, 295 N.W.2d 118 (N.D. 1980), the North Dakota Supreme Court considered an original petition for habeas corpus that challenged an alleged erroneous application of good-time credits.  The court considered the merits of the challenge, but stated that, henceforth, such challenges must first be brought in district court pursuant to the Uniform Post-Conviction Procedure Act that was codified at former N.D.C.C. ch. 29-32 [since repealed and replaced by ch. 29-32.1].  Thereafter, in at least two cases, the North Dakota Supreme Court addressed the merits of claims of unlawful deprivation good-time credits that were presented to it by way of appeals from

district proceeding initiated under former ch. 29-32.  <u>Matz v. Satran</u>, 313 N.W.2d 740, 741 & n.1 (1981); <u>Shulze v. Satran</u>, 368 N.W.2d 531 (N.D. 1985).

However, since these decisions, former N.D.C.C. ch. 29-32 has been repealed and replaced by ch. 29-32.1.  And, unlike its predecessor, ch. 29-32.1 contains language which suggests that a motion for post-conviction relief is not an appropriate remedy for challenging deprivations of good-time credits.  Section 29-32.1-01(2) states in relevant part the following:

> A proceeding under this chapter is not available to provide relief for disciplinary measures, custodial treatment, or other violations of civil rights of a convicted person occurring after the imposition of sentence.

Assuming that post-conviction relief under ch. 29-32.1 is not available, the next logical state remedy would seem to be an application for a writ of habeas corpus under N.D.C.C. ch. 32-22, which is what Alex attempted in this case.  However, as noted above, two state district court judges have now concluded at the urging of Respondent that habeas relief under N.D.C.C. ch. 32-22 is not available to challenge a deprivation of good-time credits when a prisoner is legally in custody and the minimum period of incarceration that must be served before good-time reductions become effective has not yet expired.  But, it does not appear the North Dakota Supreme Court has yet addressed this argument.

In the absence of habeas relief being available under ch. 32-22, there <u>may</u> be other possibilities for obtaining state district court relief, including, separately or in combination: an action for a declaratory judgment under ch. 32-23; a request for an affirmative injunction under ch. 32-06; or a request for a writ of  mandamus under ch. 32-34.[6]  While the court is not aware of any North Dakota cases that have permitted a challenge to a deprivation of good-time credits under these

---

[6]  An adjudicative action under the Administrative Practices Act does not appear to be an available remedy because the Department of Corrections is not an administrative agency under the Act.  N.D.C.C. § 28-32-01(2)(m).

statutes, the North Dakota Supreme Court has held that a declaratory judgment action could be brought by a prisoner to litigate past and continuing rights to receive medical care. Ennis v. Dasovick, 506 N.W.2d 386 (N.D. 1993). Also, courts in other states have relied upon these kinds of remedies to consider challenges to the administration of prisoners' sentences, including the denial of parole and deprivation of good-time credits. See e.g., Wayne v. Missouri Board of Probation and Parole, 83 F.3d 994, 996-97 (8th Cir. 1996) (recognizing that Missouri law sanctions several devices for challenging a parole denial–the filing of a declaratory judgment action, petitioning for habeas corpus relief, and seeking a writ of mandamus); Scott v. Sumner, 887 F.2d 1089, 1989 WL 123648 (9th Cir. October 3, 1989) (unpublished) (observing that mandamus proceedings are available in Nevada to state prisoners challenging alleged misinterpretations of statutes regulating the grant of credits for good behavior); Chapman v. Norris, 2005 WL 1922582, *3 (E.D.Ark. July 25, 2005) (noting that declaratory and mandamus proceedings can be used in Arkansas to challenge a denial of good-time credits); Jones v. Watkins, 945 F.Supp. 1143, 1149 (N.D. Ill. 1996) (acknowledging that an Illinois prisoner seeking a review of a prison administrative decision can file in state court a petition for a writ of habeas corpus, mandamus, or for declaratory judgment); Eugene v. Beck, 627 S.E.2d 284 (N.C. App. Ct. 2006) (denying on the merits an inmate's petition for declaratory relief and writ of mandamus wherein the inmate had alleged that a decrease in his good-time credits constituted a violation of his constitutional rights).

Aside from what remedies might be available in state district court, it appears the North Dakota Supreme Court can grant habeas corpus relief for an unlawful deprivation of good-time credits under the original jurisdiction conferred upon it by Art. VI, § 2 of the North Dakota Constitution. See Smith v. Satran, supra; cf. Jensen v. State, 373 N.W.2d 894, 897 (N.D. 1985).

14

Further, there is an argument that such relief can be granted despite any limitations imposed by ch. 32-22 upon a state district court granting relief.  See Jensen v. State, 373 N.W.2d at 900 (stating there are limits on the legislature's ability to restrict the court's exercise of its original jurisdiction to issue a writ of habeas corpus).

In this case, although the state district court determined Alex was not entitled to the issuance of a writ, in part, because N.D.C.C. ch. 32-22 was not an appropriate remedy, the district court proceeded to address the merits of his constitutional claims.  Consequently, it would be futile to require Alex to return to state district court seeking some other remedy.  However, it does appear that Alex may yet have a remedy that he can pursue before the North Dakota Supreme Court by the filing of an original petition for habeas corpus pursuant to the authority conferred by Art. VI, § 2 of the North Dakota Constitution, and there does not appear to be a time limit on this remedy.   Also, the North Dakota Supreme Court may not agree with Respondent's argument that N.D.C.C. ch. 32-22 bars consideration of Alex's habeas claims.  For these reasons, Alex should be required to exhaust his habeas remedies before the North Dakota Supreme Court unless the court wishes to exercise its discretion under AEDPA and dismiss Alex's claims on the merits.[7]

**2.      Whether the court should exercise it discretion to consider the merits and dismiss the petition**

---

[7] In addition to arguing that Alex failed to exhaust his remedies by not petitioning the North Dakota Supreme Court for habeas relief, Respondent also argues that Alex failed to present to the state district court the first claim in his petition to this court, which is that the Committee did not allow him to see any  statements or other evidence against him. However, a review of Alex's state court petition and his supporting briefs indicates the contrary. For example, the second claim in Alex's state court petition reads as follows:

> 2.  The investigative report mentions information by a Confidential Informant(s) (C.I.), which the Petitioner was not allowed to see prior to the Dis.Adj.Comm. hearing, he saw no reason to attend the meeting since the committee's mind was already made up as to his guilt and he was not allowed to see edited versions of the statements against him.

See Respondent's Motion to Dismiss, Ex. 11.  Further, it appears this claim was argued in Alex's briefs to the state district court both initially and upon motion for reconsideration.  See Respondent's Motion to Dismiss, Exs. 12 & 15A.

Respondent also argues that Alex's petition is subject to dismissal on the merits. The court does have the discretion under 28 U.S.C. § 2254(b)(2) to consider Alex's petition on the merits notwithstanding his failure to exhaust available state-court remedies, but only if the court believes the petition should be denied.

What follows is a preliminary review of Alex's principal due process claim. The ultimate conclusion is that Alex has raised a serious, non-frivolous due process claim the proper resolution of which may require the gathering of additional facts and possibly an evidentiary hearing. For these reasons, it is recommended that the court not exercise its discretion to consider the merits of Alex's claims and that he be required to first exhaust any available remedies before the North Dakota Supreme Court.

One of the due process requirements established by <u>Wolff</u> is the right to advance written notice of the disciplinary charges.[8] <u>Wolff</u> and its progeny have made clear that this notice must be something more than a conclusory allegation of an administrative violation and that some notice of the factual bases underlying the accusation must also be given. <u>See</u>, <u>e.g.</u>, <u>Wolff</u>, 418 U.S. at 564; <u>Sira v. Morton</u>, 380 F.3d 57, 70-72 (2nd Cir. 2004); <u>Northern v. Hanks</u>, 326 F.3d 909, 910 (7th Cir. 2003); <u>Freitas v. Augur</u>, 837 F.2d 806, 809 (8th Cir. 1988); <u>see</u> <u>Jensen v. Satran</u>, 332 N.W.2d 222, 228 (N.D. 1983) (concluding that the factual information contained in the incident report in that case was sufficient to allow the prisoner to prepare a defense). Recently, the Supreme Court in

---

[8]  In the context of disciplinary hearings involving the deprivation of good-time credits, governing case law, beginning with the seminal case of <u>Wolff v. McDonnell</u>, strikes the balance between an inmate's due process rights and the institutional needs and objectives by requiring that an inmate be provided (1) "advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his [or her] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." <u>Espinoza v. Peterson</u>, 283 F.3d 949, 952 (8th Cir. 2002); <u>see also</u>, <u>Hrbek v. Nix</u>, 12 F.3d 777, 780 (8th Cir.1993) (citing <u>Wolff</u>, 418 U.S. at 563-67).

Wilkinson v. Austin emphasized, "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they enjoy that right they must first be notified.'" 545 U.S. 209,125 S.Ct. 2384, 2396 (2005)(quoting Fuentes v. Shevin, 407 U.S. 67, 80 (1972)).

On the other hand, due process in this context does not require that all of the evidence against the prisoner be disclosed prior to the hearing.  Rather, the ultimate test of the adequacy of the pre-hearing disclosure is whether it provides the prisoner with a meaningful opportunity to marshal the facts and prepare a defense.  See, e.g., Wolff v. McDonnell, 418 U.S. at 559-564;  Sira v. Morton, 380 F.3d at 72; Freitas v. Augur, 837 F.2d at 809.

Further, prison officials have the right to withhold evidence from the prisoner when there is a reasonable justification for doing so, most commonly when disclosure would create a risk of violence or retaliation against inmates or staff.  Sira v. Morton, 380 F.3d at 72; Freitas v. Augur, 837 F.2d at 809;  see Ponte v. Real, 471 U.S. 491 498-499 (1971).  And, while a court should give substantial deference to judgments made by prison officials regarding institutional security and the need to withhold evidence in particular cases, there are limits upon the discretion that prison officials can exercise in this area and "prison officials who decide to circumscribe inmates' procedural rights at disciplinary hearings must offer a reasonable justification for their actions, if not contemporaneously, then when challenged in a court action."  Sira v. Morton, 380 F.3d at 75.

In this case, the only thing that appears to have been disclosed to Alex prior to the reconvened hearing with respect to the gang charge (at least based upon the record presently before the court) is the bare allegation of involvement in gang activity without any of the underlying particulars, such as the identity of the gang, the time period of alleged involvement, or any summary

of the acts alleged to constitute gang activity or membership.  In particular, the primary evidence relied upon by Respondent in upholding the Committee' conclusion that Alex was guilty of the gang charge does not appear to have been disclosed to Alex in advance of the reconvened hearing,  *i.e.*, his admission and the photographs.

There may be cases in which prison officials are justified in withholding virtually all of the evidence against a prisoner on grounds of institutional security with the ultimate protection of due process rights being the opportunity to have this confidential information later reviewed *in camera* by the court.  In fact, in a recent action involving another prisoner, this court concluded, based upon the adoption of a report and recommendation of the undersigned, that prison officials were justified in not disclosing most of the evidence relied upon to find the prisoner guilty of the disciplinary violation in that case based on grounds of institutional security and the need to protect an ongoing investigation as to the use of drugs at the prison.  See Schultz v. Schuetzle, Case No. 1:05-cv-092.

In this case, however, even giving Respondent the benefit of the doubt with respect to the photographs, it is difficult to understand what safety or security concerns would justify not providing Alex with advance notice of the claimed admission, particularly given that not only the admission, but also the identify of Lt. Radenz, were disclosed  in the Committee's written decision immediately following the hearing.

Respondent argues Alex should have attended the reconvened hearing, but there is no indication the admission or any of the other confidential information would have been disclosed at that time, particularly since it had not been disclosed at the earlier hearing that Alex attended. Moreover, even assuming he would have been advised of the admission during the hearing, it is not clear this would have afforded him sufficient opportunity to make a meaningful response, including

requesting that witnesses be called, such as, Lt Radenz, who Alex believed either fabricated the admission or misunderstood what he had been told.   It is precisely because of these kinds of concerns that cases have suggested that disclosure at the hearing may be too late.   See, e.g., Wolff v. McDonnell, 418 U.S. at 454; Sira v. Morton, 380 F.3d at 70-72.[9]

Finally, Respondent argues that Alex's admission satisfies the "some evidence" standard set forth in Superintendent v. Hill, 472 U.S. 445 (1985); hence, the court need not concern itself with any of Alex's claims of constitutional violation.   However, based on the authority cited above, it does not appear the cases have gone so far as to conclude that satisfaction of the "some evidence" standard trumps a violation of the initial notice requirement of Wolff, at least when prison officials do not have a reasonable justification for withholding the information.[10]

---

[9]   After Alex was advised of the admission in the Committee's decision, he did have the opportunity to make comments to the Respondent as part of his appeal.   However, it is not clear what weight the Respondent gave those comments given his statement that whatever Alex had to say should have been said at the reconvened hearing.   Further, it is not clear whether Alex would have had the right to appear personally before the Respondent at that point or request the opportunity to call witnesses, etc.   For these reasons, the adequacy of the initial disclosure required by Wolff and its progeny may have to be made as of the time of the Committee hearing.   Nevertheless, there may be an argument that the disclosure of the admission and the identity of Lt. Radenz in the Committee's decision was sufficient to satisfy due process given the remaining process that was still available.   If that argument is made by  Respondent, it may require that further definition be given to exactly what rights were available to Alex under the prison's then existing procedures beyond what is indicated in the record presently before the court.

[10]   In fact, at least one court has refused to consider a harmless-error analysis with respect to an alleged violation of Wolff's initial notice requirement upon the grounds that adequate notice of the charge is so fundamental to the fairness of the proceeding that harmless-error analysis is not appropriate. Giano v. Sullivan, 709 F.Supp. 1209, 1217 (S.D.N.Y. 1989).   And, presumably, something more than "some evidence" would be required to reach the conclusion of harmless error since the relevant conclusion in any harmless-error determination is that the outcome would not have been different.   See e.g., Thompson v. Lacey, 817 F.2d 1315, 1317-18 (8th Cir. 1987).  In other words, if there is only "some evidence," presumably the Committee could have discounted it and reached a different conclusion either with respect to liability or its recommendation regarding the appropriate penalty.

Also, it does not appear that any determination has been made regarding the reliability of the confidential information and this may be required given the circumstances of this case.  See Sira v. Morton, 380 F.3d at 76-81; Turner v. Caspari, 38 F.3d 388, 393 (8th Cir. 1994); Freitas v. Augur, 837 F.2d at 810-812.   Respondent argues that a reliability review is unnecessary because Alex's admission is sufficient to meet the "some evidence" standard citing to Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2002).   However, this is not so clear.   Based on the record before the court, it appears the Committee elected to treat the admission as confidential information.   Further, the admission, arguably, is inculpatory only when it is considered in the context of the other confidential information as noted in an earlier footnote.

Respondent claims in his brief that the Committee did not state it had relied upon the confidential information.   However, this does not appear to be correct.   The Committee, as part of its written decision, checked the box

Upon examination of the record before the court, Alex has raised a serious, non-frivolous issue with respect to whether the prison officials complied with the requirements of Wolff v. McDonnell, and its progeny, in terms of the initial disclosure of information to him regarding the charge for which the discipline ultimately was imposed.[11]  Further, the record before the court may not be sufficient to properly resolve this claim.  Consequently, given the strong preference under AEDPA for giving state courts the first opportunity to consider possible constitutional deficiencies and to make the necessary record, it is recommended that the court not proceed at this time to consider the merits pursuant to § 2254(b)(2).

### 3.  Alex's petition should be stayed pending state-court exhaustion of his claims rather than dismissed

Respondent requests that this matter be dismissed without prejudice for failure to exhaust state-court remedies.  However, if this matter is dismissed, there is a good possibility that it may be time-barred under AEDPA before Alex could return to this court following exhaustion of any remaining state-court remedies.

Although it may still be an open question in the Eighth Circuit, most of the circuits that have addressed the issue have held that  AEDPA's one-year limitation period applies to § 2254 petitions challenging prison administrative decisions.  E.g. Dulworth v. Evans, 442 F.3d 1265, 1267 (10th Cir. 2006) (noting that the Second, Fourth, Fifth, and Ninth circuits have applied the one-year limitation period, but the Seventh Circuit has held it does not apply in this context).  And, in this case, the time

---

"Investigative Report" as one of the items upon which it based its findings.  See Respondent's Motion to Dismiss, Ex. 6.


[11]  No evaluation has been made of Respondent's other principal claim, which is that the Committee was not impartial given the fact that it evaluated the evidence and recommended that an alternative charge be filed.

spent by Alex in prosecuting his present federal habeas corpus petition does not toll the running of the one-year limitation period.  Duncan v. Walker, 533 U.S. 167 (2000).

Recently, the Supreme Court in Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528 (2005) held that a federal district court may employ a "stay-and-abeyance" procedure when there is a danger that the limitation period will run prior to the prisoner being able to return to federal court.  Id. at 1534-36. However, the Court stated that  time limits should be imposed so that the procedure is not abused.  The Court stated that, typically, the limits should be 30 days to file in state court and then 30 days from when the state-court remedies are exhausted to indicate the petitioner is ready to resume the proceedings. Id.  Also, the Court indicated this procedure should be employed only in cases when the prisoner has demonstrated good cause for initially not pursuing the state remedy. Id.

In this case, Alex did not completely bypass state remedies; he filed for  habeas relief in state district court and was denied.  More importantly, his argument that further exhaustion of state remedies would be futile is by no means  frivolous given the conclusions reached by the state district court in his case and in the recent case of Schultz v. Schuetzle, as previously discussed.  In fact, even though it appears relief may still be available before the North Dakota Supreme Court, this is by no means certain and Alex may ultimately be proven correct in terms of his futility argument.

For these reasons, there is good cause for not penalizing Alex by dismissing this action with the most likely result being that he could never return to exercise his federal habeas rights. Consequently, it is recommended that Alex's petition be stayed and held in abeyance pending his timely petitioning the North Dakota Supreme Court for habeas relief and returning to this court once any state-court remedies made available by the North Dakota Supreme Court are exhausted.

21

Finally, while it would be futile to require Alex to return first to state district court given that court's denial of his constitutional claims, it is conceivable the North Dakota Supreme Court could require Alex to return to state district court for further proceedings before taking any action. In the event that should occur, Alex should be required to exhaust those remedies, as well as any remedies before the North Dakota Supreme Court that might be available thereafter.

## III.   <u>RECOMMENDATION</u>

For the reasons set forth above, it is hereby **RECOMMENDED** that:

1.    Respondent's Motion to Dismiss (Docket No. 6) be **DENIED** to the extent it requests dismissal of Alex's Petition, but **GRANTED** to the extent that Respondent requests that Alex be required to exhaust any remedies made available by the North Dakota Supreme Court.

2.    Alex's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Docket No. 1) be stayed and held in abeyance subject to the following conditions:

   a.    Alex filing a petition for habeas corpus relief with the North Dakota Supreme Court within 30 days of the court adopting this recommendation setting forth the claims that are made in the petition to this court and Alex exhausting any remedies made available by the North Dakota Supreme Court, including any requirement by the North Dakota Supreme Court that Alex return to state district court followed by exhaustion of any remedies thereafter available before the North Dakota Supreme Court.

b.      Within 30 days of Alex having completed the exhaustion of any remedies made available by the state courts, Respondent filing a motion to lift the stay or otherwise notifying the court that exhaustion has been completed and that he desires to proceed with his petition in this court.

3.      Any failure to comply with the foregoing requirements will be grounds for dismissal of Alex's petition to this court.


## NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to Local Rule 72.1(E)(4), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken.


Dated this 5th day of June, 2006.


/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge